IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHAKIR A. JONES,

        Petitioner,

v.                                             Civil Action No. 21-1192-JLH

BRIAN EMIG, Warden, and ATTORNEY
GENERAL OF THE STATE OF
DELAWARE,

        Respondents.[1]

---

Shakir A. Jones. *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 10, 2024
Wilmington, Delaware

---

[1] The Court has substituted Warden Brian Emig for former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).


Hall, District Judge:

Petitioner Shakir A. Jones filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging three grounds of relief. (D.I. 1.) He subsequently filed a motion to amend ground one and withdraw grounds two and three of his original petition. (D.I. 6.) The Honorable Richard G. Andrews granted the motion to amend. (D.I. 6-4; D.I. 7.) The State filed an Answer in opposition to the amended Petition. (D.I. 14.) Thereafter, on January 9, 2024, the case was reassigned to the undersigned's docket. For the reasons set forth below, the Court will deny the Petition.

I.   BACKGROUND

> Rashawna Weathers was murdered by stabbing and left for dead in a porta-potty in the Kirkwood Park off East 11th Street in Wilmington. Police followed a trail of blood from the crime scene along the 1300 block of East 16th Street to an apartment building where [Petitioner] resided. They also found [Petitioner] in the neighborhood, with a bandaged right hand, which he explained was the result of a laceration from a fight with his girlfriend a couple of days earlier. Surveillance cameras identified [Petitioner] walking away from Kirkwood Park on the night Rashawna was killed, with an apparent injury to his right hand.
>
> [Petitioner] was on probation at the time of these offenses as a result of a different assault in 2004 in which he stabbed a different woman. He had spent 10 years in jail for that offense and was on the street for less than 2 years before he stabbed and killed Ms. Weathers, who left behind three minor children.

*State v. Jones*, 2020 WL 6409391, at *1 (Del. Super. Ct. Nov. 2, 2020).

In January 2018, Petitioner was indicted for first degree murder and possession of a deadly weapon during the commission of a felony ("PDWDCF"). (*See* D.I. 15-1 at Entry No. 3; D.I. 15-3 at 1.) On March 4, 2019, Petitioner pleaded guilty to second degree murder (a lesser-included offense of first degree murder) and PDWDCF. (D.I. 15-3 at 18); *see Jones*, 2020 WL

6409391, at *1. The plea agreement, which Petitioner signed, provided that "[t]here is a joint sentencing recommendation of 30 years of unsuspended Level V time.[2]" (D.I. 15-3 at 18.) In addition, Petitioner was advised at the plea hearing that there was a "joint recommendation for 30" but that the court "could impose up to 50 years [and] must impose at least 17," and Petitioner stated that he understood. (D.I. 15-3 at 42–43.)

On June 7, 2019, the Superior Court followed the joint sentencing recommendation and sentenced Petitioner as follows: (1) for his second degree murder offense, to 30 years at Level V, suspended after 25 years for 30 months of decreasing levels of supervision; and (2) for his PDWDCF offense, to 5 years at Level V. (D.I. 15-3 at 47-53.) Petitioner did not appeal his conviction or sentence.

Between August 19, 2019, and May 18, 2020, Petitioner filed a total of three *pro se* motions for sentence modification or correction under Delaware Superior Court Criminal Rule 35. (D.I. 15-1 at Entry Nos. 29, 30, 48.) He also filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on September 25, 2019, followed by an amended Rule 61 motion on March 10, 2020. (D.I. 15-1 at Entry Nos. 31, 46.) On November 2, 2020, the Superior Court denied all of Petitioner's Rule 35 and Rule 61 motions in a single opinion. *See Jones*, 2020 WL 6409391, at *3. The Delaware Supreme Court affirmed on April 5, 2021. *See Jones v. State*, 250 A.3d 76 (Table), 2021 WL 1259520, at *2 (Del. Apr. 5, 2021).

---

[2] Level V is incarceration.

## II.  LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1),(2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of

---

[3] A claim has been "adjudicated on the merits" for purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

§ 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98–101 (2011).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

### C. Ineffective Assistance of Counsel

In order to establish a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259–60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

A court can choose to address the prejudice prong before the deficient performance prong, and the court can reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. If the state court only addresses one prong of the *Strickland* test without addressing the merits of the other prong, and the federal court decides to consider the unaddressed prong, the federal court's review of the unaddressed prong must be *de novo. See, e.g., Porter v. McCollum,* 558 U.S. 30, 39 (2009) ("Because the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's *Strickland* claim *de novo.*"); *Rompilla v. Beard,* 545 U.S. 374, 390 (2005) (applying *de novo* review where state courts did not reach prejudice prong under *Strickland*).

### III. DISCUSSION

Petitioner's amended Petition contains only one claim. Petitioner asserts that his trial counsel provided ineffective assistance when he misstated the statutory range of penalties for second degree murder on a truth-in-sentencing form that was provided to Petitioner. That form

erroneously stated that the maximum statutory penalty for second degree murder was 25 years. However, the statutory range for second degree murder is actually 15 years to life.[4] During the plea colloquy, prosecuting and defense counsel and the court likewise stated that the maximum statutory penalty for second degree murder was 25 years. (*See* D.I. 15-3 at 20-46.)

According to Petitioner, the incorrect statutory range for second degree murder on the form left him "under the assumption that he could only receive 17-50 years for both offenses, and under the Plea Agreement [he] was under the assumption that he could only receive 15-25 years maximum for murder second degree." (D.I. 1 at 9.) Petitioner contends that trial counsel's error rendered his guilty plea involuntary and unknowing because he "would have rejected the plea offer and proceeded to trial" "if the correct information was conveyed." (D.I. 1 at 5–6; D.I. 6-4 at 2.) Petitioner contends that trial counsel's error caused him to improperly receive "five additional years of punishment for accepting the plea." (D.I. 6-4 at 20.)

Although Petitioner did not present this exact ineffective assistance claim to the Delaware state courts during his post-conviction proceedings, the record reveals that he presented a substantially similar argument to the Delaware Supreme Court when he appealed the denial of his Rule 35 and Rule 61 motions.[5] The Delaware Supreme Court "assumed without deciding"

---

[4] *See* 11 Del. C. §§ 635, 4205(b)(1).

[5] The *pro se* Rule 35 motions Petitioner filed in the Superior Court alleged that his sentence was illegal because trial counsel misstated the potential length of his sentence for second degree murder on his truth-in-sentencing form and because he could not be sentenced to probation following his sentence. *See Jones*, 2020 WL 6409391, at *1. The *pro se* Rule 61 motions Petitioner filed in the Superior Court alleged that the trial court imposed an illegal sentence and that trial counsel provided ineffective assistance for allowing the Superior Court to impose an illegal sentence, for not investigating evidence, and for failing to conduct meaningful adversarial testing. (D.I. 15-6; D.I. 15-7; D.I. 15-9.)
The Superior Court denied Petitioner's Rule 35 and Rule 61 motions in a single opinion, after concluding that the sentence imposed "was legal and entirely consistent with the bargain arrived at between" Petitioner, trial counsel, and the State. *Jones*, 2020 WL 6409391, at *2. The

that trial counsel's misstatement regarding the potential maximum sentence constituted deficient performance under *Strickland*'s first prong, but it concluded that trial counsel's error did not amount to constitutionally ineffective assistance because Petitioner failed to demonstrate that he was prejudiced by the error under *Strickland*'s second prong. *See Jones*, 2021 WL 1259520, at *2.

Before this Court, Petitioner asserts that the *Strickland* prejudice prong is satisfied because he would not have entered into a plea agreement if trial counsel had correctly advised him that the statutory sentencing range for second degree murder was 15 years to life. Since the Delaware Supreme Court adjudicated the merits of Petitioner's ineffective assistance claim under the *Strickland* prejudice prong, the Court will review the Delaware Supreme Court's determination as to prejudice under § 2254(d).

The Delaware Supreme Court correctly identified *Strickland* as setting forth the standard applicable to Petitioner's ineffective assistance claim. As for whether the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case and made a reasonable determination based on the evidence before it, the Court is satisfied that it did. Petitioner was charged with first degree murder, which carried a mandatory life sentence upon conviction, and PDWDCF. *See* 11 Del. C. §§ 636(b), 4209(a). Petitioner and the State agreed to

---

Superior Court also held that it would "neither modify [the sentence] nor find counsel ineffective for failing to litigate the legality of the sentence when it was plainly legal." *Id.*

On post-conviction appeal, Petitioner argued that trial counsel "was ineffective by giving [him] misleading information causing [Petitioner] to enter a plea bargain that he otherwise would not have." (D.I. 15-2 at 18.) Petitioner stated that trial counsel "falsely assured" him that he would receive a cumulative 30-year sentence, and Petitioner contended that trial counsel should have "object[ed] to the [trial court] sentencing [him] over the maximum Level 5 term of imprisonment for Murder Second (15 to 25 years) as stated on the [truth-in-sentencing] Form." (D.I 15-2 at 20–21.) Petitioner also argued that trial counsel's deficient performance prejudiced him because "he would not have pleaded guilty and would have insisted on going to trial" but for trial counsel's errors. (D.I. 15-2 at 23–24.)

8

a plea deal under which he would plead guilty to the lesser included offense of second degree murder—which had a maximum penalty of life but did not carry a mandatory life sentence—as well as PDWDCF, and the parties would jointly recommend a total sentence of 30 years. Petitioner was advised, erroneously, that his total maximum period of incarceration was 50 years—when it was in fact life—but he was advised that he could be sentenced to anywhere between 17 and 50 years.[6] (D.I. 15-3 at 27, 43.) Petitioner's statements during his plea colloquy reveal that he valued the possibility of being released from prison one day: (1) "I feel like I'm being forced into taking [a plea offer] because, one, if I go to trial and lose, it's life compared to having a chance of getting out one day. . . . Which is the reason why I was – I was requesting something lower than 35, 30 years" (D.I. 15-3 at 26); and (2) "I'm willing to be held accountable if I got to, to be able to walk out one day . . . . And if I gotta accept the plea, then I accept the plea." (D.I. 15-3 at 33.) The State presented Petitioner with multiple plea offers, and he chose to accept an offer to plead to second degree murder and PDWDCF with a joint recommendation for a total of "30 years of unsuspended Level V time." (D.I. 15-3 at 18, 22–23.) The Superior Court followed the joint sentencing recommendation and sentenced Petitioner to a total of 30 years of unsuspended Level V incarceration, which was well below the actual statutory maximum (and still below the 50 years he was informed he could get). Under these circumstances, the Delaware Supreme Court concluded that there was not a reasonable probability that Petitioner would not have pleaded guilty and insisted on going to trial had he been informed of the correct statutory maximum for the second degree murder offense.

---

[6] The truth-in-sentencing form was filled out with the following information: (1) the statutory range for second degree murder was 15-25 years at Level V, with a 15-year minimum mandatory; (2) the statutory range for PDWDCF was 2-25 years at Level V, with a 2-year minimum mandatory; (3) the total consecutive maximum penalty was 17 to 50 years of incarceration. (D.I. 15-3 at 19.)

The Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case and made a reasonable determination based on the evidence before it that Petitioner would still have pleaded guilty had trial counsel informed him that a conviction for second degree murder could have resulted in a life sentence. Accordingly, the Court will deny the § 2254 petition.

## IV.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the Petition does not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.  CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing or issuing a certificate of appealability. An appropriate Order will be entered.